**In re Tecola W. HAGOS, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 92–SP–88.**

District of Columbia Court of Appeals.

Submitted Nov. 5, 1992.

Decided Nov. 17, 1992.

Before SCHWELB, FARRELL, and KING, Associate Judges.

PER CURIAM:

The Board on Professional Responsibility, in agreement with the findings and recommendation of a Hearing Committee, has recommended that respondent be disbarred for misappropriation and dishonest handling of a client's funds over a period of several years. *See In re Thompson,* 579 A.2d 218 (D.C.1990); *In re Addams,* 579 A.2d 190 (D.C.1990) (en banc). Respondent did not appear at the hearing conducted by the Hearing Committee; submitted no briefs to the Hearing Committee or the Board on Professional Responsibility; and has filed no brief with this court. For the reasons stated by the Board in its Report and Recommendation, appended hereto, it is

ORDERED that Tecola W. Hagos shall be disbarred from the practice of law in the District of Columbia, effective thirty days from the date of this Order.[1]

*So ordered.*

---

7. There was, however, a sewer cover further down the block, near 1828 Q Street, S.E., which was in the sidewalk.

1. We remind respondent of D.C.Bar R. XI, § 14 requiring disbarred and suspended attorneys to notify all clients and attorneys for adverse parties about the disbarment or suspension and, in particular, of Rule XI, § 14(g) requiring the attorney to maintain records showing compliance with § 14 as a possible condition of eventual reinstatement. We also remind respondent of D.C.Bar R. XI, § 16(c) providing that eligibility for reinstatement after suspension or disbarment shall not begin until the period of suspension (or, for disbarment, a period of five years) has elapsed "following the attorney's compliance with section 14."

## REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

Respondent has been charged in this case with violations of several disciplinary provisions—misappropriation, commingling and dishonesty (DR 9–103(A), 1–102(A)(4)); failure to account for funds received (DR 9–103(B)(3)); conflict of interest (DR 5–104(A)); and failure to return property of a client (DR 9–103(B)(4))—all arising from his representation of a corporate client in the sale of a business. Respondent answered the Petition, but did not appear at the hearing, and has submitted no briefs to the Hearing Committee or to the Board.

The Hearing Committee found violations of the misconduct charged (except conflict of interest), and recommended disbarment as a sanction. The Board agrees with the Hearing Committee's recommendations in all respects, including that Respondent be disbarred.

### The Facts

In April, 1985, Respondent was retained by AYKY, Inc. to represent it in the sale of its retail food business. A retainer agreement was signed by the parties, and Respondent was given a power of attorney to establish a liquidating account to receive the proceeds of the sale and to make disbursements to creditors and shareholders of AYKY. Respondent opened such an account at Riggs National Bank.

In June, 1985, a contract was entered into for sale of the AYKY business for $42,000. Under the contract, the purchasers were to pay $30,000 at closing, and $1,000 per month thereafter for 12 months. A post-closing adjustment by the parties reduced the total consideration to $38,000.

From the opening of the account in 1985, until it was closed in November, 1988, Respondent received the full $38,000 purchase price from the buyers of the business. Bank records, however, show deposits to the account of only $36,000. The $2,000 of the sale proceeds that was not deposited in the liquidating account consists of two $1,000 checks, provided to Respondent in June, 1986 and November, 1988. These checks were cashed by Respondent and the proceeds never delivered to his clients.

The evidence (bank records, cancelled checks, and the testimony of AYKY's officers) revealed the following activity concerning the $36,000 that was deposited in the bank account:

1. On February 26, 1986, Respondent withdrew $5,000 from the liquidating account in a check payable to "American Investment Corporation" ("AIC"). The officers of AYKY testified that they had never heard of AIC and that Respondent was not authorized to pay funds to any such entity.[1]

2. On April 15, and August 6, 1986, Respondent wrote two more checks on the liquidating account payable to AIC, for $7,000 and $4,000, respectively, also without the consent of his clients. A $1,000 check, payable to Respondent, was written on the account on August 10, 1986, with the notation that it was for "investment purposes."

3. Between July, 1985 and April, 1989, Respondent withdrew a total of $12,815 from the liquidating account, in eight separate transactions, ranging from a high of $4,000 to a low of $65. No specific explanation was offered for these withdrawals, except that Respondent acknowledged to Bar Counsel that many of these withdrawals, as well as some deposits to the liquidating account, had nothing to do with the AYKY restaurant transaction. (The Hearing Committee noted that Respondent's legal fees to AYKY during this period were $6,905 and so, even if the withdrawn amounts were for legal fees, Respondent still withdrew almost $6,000 more than he was entitled to.)

Towards the end of Respondent's representation of AYKY, one of its principals requested that Respondent provide him with the bank records of the liquidating account. Respondent failed to do so. On

1. AIC was an investment company in which Respondent was a director and officer.

other occasions when Respondent supplied accountings to his client, they were insufficient to allow the client to understand the activity in its account. Moreover, all of the accountings were inaccurate in overstating the balance in the liquidating account, and none mentioned any of the withdrawals in favor of AIC.[2] Respondent deposited funds from other sources into the liquidating account to cover some or all of the withdrawals he made.

In April, 1989, the principals of AYKY retained other counsel to advise them concerning Respondent's activities and to assist them in obtaining accurate records of the liquidating account. Respondent failed to reply to the new lawyer's several letters and telephone calls requesting the files, and never provided the records of the liquidating account.

### Discussion

Against these facts, we review the Hearing Committee's several recommendations of disciplinary violations. First, and most serious, are the misappropriation and commingling charges (DR 9–103(A) and 1–102(A)(4)). The Committee correctly concluded that Respondent's repeated unauthorized withdrawals of funds from the liquidating account and Respondent's direct use of two $1,000 checks constituted a misappropriation of a client's funds. See *In re Harrison*, 461 A.2d 1034, 1035 (D.C.1983). No other conclusion could be drawn from Respondent's conduct. At least $17,000 was withdrawn from the liquidating ac-

count for purposes unrelated to Respondent's representation of AYKY, and the account repeatedly fell below the amounts owed to the client.[3] The Committee was entitled to conclude, and did so conclude, from the absence of a credible explanation for the withdrawals, that they were for Respondent's own purposes. See *In re Thompson*, 579 A.2d 218 (D.C.1990). Moreover, two $1,000 checks were never deposited in the liquidating account, and the Committee also properly concluded that they were misappropriated. The commingling charges is admitted by Respondent and finds support in the numerous unexplained withdrawals from, and deposits to, the liquidating account by Respondent.

There is no question that the withdrawals were intentional, which in turn supports the dishonesty charges. The dishonesty charge is also supported by the false accountings provided by Respondent to his client, from which we can infer that Respondent was deliberately trying to conceal the unauthorized withdrawals from the liquidating account. See *In re Addams*, 579 A.2d 190, 199 (D.C.1990) (en banc).

The Hearing Committee also correctly concluded that Respondent violated DR 9–103(B)(3)[4] by failing to keep accurate records of his transactions on behalf of his client, and by failing to provide any accurate accountings to the clients. Respondent also violated DR 9–103(B)(4)[5] when he failed, after repeated requests by his client and its new counsel, to provide files and bank records concerning the representation. Similar facts were found to consti-

---

**2.** Respondent's first accounting, in March, 1986, showed a balance in the liquidating account of $13,025, when in fact it was $9,025. The second accounting, in January, 1988, indicated a balance of $12,055, when in fact it was $218.95.

**3.** In his unsworn answer to the Petition, Respondent asserted that the withdrawals, for investment in AIC, were orally authorized by principals of AYKY. Those principals denied such authorization, and the Committee credited their testimony. There is no reason to disturb this finding.

**4.** DR 9–103(B)(3) provides that: "A lawyer shall: ... Maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them."

**5.** This provision reads:

A lawyer shall:
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

tute misconduct in *In re Washington*, 541 A.2d 1276 (D.C.1988).

Finally, the Committee recommended against a finding of a violation of DR 5–104(A), concerning conflict of interest between lawyer and client.[6] We agree, but for different reasons. The Committee concluded that there was insufficient evidence that Respondent, although a director of AIC, stood to gain anything from his investment in AIC, or that the proceeds of the restaurant sale were even invested in AIC. Thus, it concluded that there was insufficient evidence of a conflict of interest.

We do not take any position on the Committee's reasoning. In our view, DR 5–104(A) is not even applicable to these facts. In light of the Hearing Committee's finding (with which we agree) that there was no agreement (or any other form of authorization) between Respondent and his client to invest funds in AIC, there was no "business transaction" between lawyer and client for the purposes of DR 5–104(A). Rather, Respondent stole his clients funds, and then weakly attempted to explain his misconduct with a disbelieved story about investment in AIC.

### *Recommended Sanction*

There can be no doubt that disbarment is the appropriate sanction in this case. Respondent's misappropriation was both intentional and deliberate, as he engaged in a pattern of dishonest handling of his client's funds over a period of several years. The Court of Appeals has made it clear that disbarment is required for such misconduct. See *In re Addams*, supra; *In re Buckley*, 535 A.2d 863 (D.C.1987). The gravity of Respondent's offenses is not mitigated by this being his first disciplinary encounter. *In re Addams*, 579 A.2d at

6. DR 5–104(A) provides that
   A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the

199; *In re Robinson*, 583 A.2d 691 (D.C. 1990).

Board On Professional Responsibility

By: /s/Barry E. Cohen
Barry E. Cohen

January 10, 1992

All members of the Board concur in this Report, except Mr. Donnenfeld, Mr. Howard and Ms. Christensen, who did not participate.

lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.