**In re Robert D. POWELL, Respondent,**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**Nos. 92–BG–1392, 93–BG–12.**

District of Columbia Court of Appeals.

Argued Feb. 24, 1994.

Decided Aug. 25, 1994.

Julia L. Porter, Asst. Bar Counsel, with whom Michael S. Frisch, Asst. Bar Counsel, and Leonard H. Becker, Bar Counsel, were on the brief, for the Office of Bar Counsel.

Joan L. Goldfrank, Executive Atty., for the Bd. on Professional Responsibility.

Robert D. Powell, pro se.

Before STEADMAN and SCHWELB, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

Respondent, Robert D. Powell, a member of the bars of Maryland, New York, and the District of Columbia, was found by the Court of Appeals of Maryland to have unintentionally[1] misappropriated a client's funds and was suspended indefinitely from the practice of law in Maryland, with right to reapply and make a showing of fitness in not less than six months. *Powell, supra* note 1. The District of Columbia Board on Professional Responsibility ("the Board") considered the Maryland court's findings and concluded that respondent's behavior was also violative of the District's rule against misappropriation of funds, DR 9–103(A),[2] but that the misconduct "warrants substantially different discipline in the District of Columbia." D.C.Bar R. XI, § 11(c)(4).[3] Thus, the Board recommended a six-month suspension with *automatic* reinstatement.

Both respondent and Bar Counsel oppose the Board's recommendation. Respondent argues that he did not violate the District's rule against misappropriation of funds and that he should not be reciprocally disciplined

---

1. The Court of Appeals of Maryland found sufficient support in the record for the trial court's conclusion that there was no clear and convincing evidence of "dishonesty, fraud, deceit or misrepresentation" on the part of respondent in his dealings with his client. *Attorney Grievance Comm'n of Maryland v. Powell*, 328 Md. 276, 614 A.2d 102, 110 (1992).

2. The acts for which respondent is being disciplined occurred in 1988; therefore, we reference the disciplinary rules then in force in the District of Columbia.

3. Because respondent's misconduct occurred before January 1, 1991, this case is governed by our former Code of Professional Responsibility, not our current Rules of Professional Conduct. *See* Order No. M–165–88, filed March 1, 1990.

by the District.[4] Bar Counsel maintains that reciprocal discipline, including a showing of fitness as a condition of reinstatement, is appropriate. We find persuasive Bar Counsel's analysis of this case and, therefore, reject the Board's recommendation that respondent be automatically reinstated at the conclusion of a six-month suspension.

## I.

The facts of this case, presented in summary here, are more fully elucidated in the opinion by the Maryland Court of Appeals. *Powell, supra* note 1, 614 A.2d at 104–07. The complaint giving rise to disciplinary action against respondent arose from his representation of Hester Taxay ("the client"). She was the substituted plaintiff in a civil suit which concluded in a settlement whereby defendants made a cash payment to her in exchange for an order of dismissal with prejudice of the suit.

Prior to dismissal of the client's case on March 17, 1988, respondent received nine settlement checks on her behalf. Six of these checks, totalling $17,500, were deposited into a trust account which was intended to be the repository of all settlement funds and which had a balance of $110.76 prior to the deposits. Three of these checks, totalling $65,000, were mistakenly deposited into respondent's law firm's operating account which had a balance of $2,365.52 prior to the deposits.

In the months following dismissal of the case, the client sought disbursement of the settlement funds. According to respondent's accounting, $12,500 of the total collected was owed the client.[5] Respondent did not promptly forward the $12,500 to the client and instead requested that the client make an interest-bearing personal loan to him of the entire amount, citing his personal and financial difficulties. The client ultimately signed a promissory note prepared by respondent which was backdated to March 1, 1988.

The principal and interest accrued on the loan was due in January 1989. However, despite the client's repeated requests respondent made no payment until April 1989, when he mailed a check to his client in the amount only of the interest then due.[6] When the client had received no further payment from respondent by August 1989, she made complaint to disciplinary authorities in the states in which respondent was licensed to practice.[7]

In the Maryland proceedings, respondent admitted that his client's funds were misappropriated but argued that it was unintentional. 614 A.2d at 108–09. He said that the three checks deposited into the law firm's operating account had been erroneously deposited by a temporary employee. He said that he did not discover that a check for $12,500 had been misdeposited into that account until September 1988, nearly a year after the fact. Respondent became aware that an additional $52,500 had been misdeposited into that account in November 1987, shortly after the error was made. However, he allowed that money to remain in the firm's operating account because he determined that his fees and unpaid expenses exceeded $52,500.

The Maryland Court of Appeals found that respondent unintentionally misappropriated

---

**4.** Respondent makes additional arguments against the imposition of reciprocal discipline which are disposed of in sections III and IV of this opinion.

**5.** Uncontroverted evidence presented in the Maryland proceeding showed that prior to the date of settlement the balance of the trust account (even in combination with the operating account) fell well below the amount owed to the client. The balance in the trust account was as follows: $5,910.16 on December 31, 1987; $363.79 on January 31, 1988; $64.28 on February 29, 1988. The balance in the operating account was as follows: $14,420.97 on November 30, 1987; $4,762.28 on December 31, 1987; $2,619.51 on

January 29, 1988. *Powell, supra* note 1, 614 A.2d at 106.

**6.** The check bounced when initially deposited. However, upon redeposit sufficient funds were available.

**7.** The State of Maryland investigated the complaint. When respondent received a letter from Maryland Bar Counsel regarding his client's complaint in September 1989, he immediately made payment to the client of the outstanding interest and principal on the note. *Powell, supra* note 1, 614 A.2d at 107 n. 16.

his client's funds through conduct, that if not grossly negligent, was "'perilously close' to gross negligence." 614 A.2d at 112 (citation omitted). As a result, he was suspended from the practice of law indefinitely with the right to reapply in not less than six months.

## II.

We have held that D.C.Bar R. XI, § 11(c) "creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *In re Zilberberg,* 612 A.2d 832, 834 (D.C.1992) (citing *In re Velasquez,* 507 A.2d 145, 146–47 (D.C.1986) (footnote omitted)). The presumption of reciprocal discipline may be rebutted upon a showing by clear and convincing evidence that one of the five exceptions to the imposition of reciprocal discipline enumerated in § 11(c) is applicable.[8]

The Board concluded that § 11(c)(4), which allows an exception where "[t]he misconduct established warrants substantially different discipline in the District of Columbia," is applicable in this instance. We disagree.

■ In reviewing whether the "substantially different discipline" exception has been properly applied, this court engages in a two-step analysis. *See In re Garner,* 576 A.2d 1356, 1357 (D.C.1990) (per curiam). First, we determine whether the "misconduct in question would not have resulted in the same punishment here as it did in the disciplining jurisdiction." *Id.* Then, where it is clear that the discipline imposed by the District would be different, the court must determine whether this difference is so substantial as to warrant a departure from the presumption of reciprocal discipline. *Id.*

■ We state at the outset that we view the Maryland sanction as the functional equivalent of at least a six-month suspension with a requirement of fitness. When viewed as such, this sanction falls within the range of measures this court has imposed in cases involving negligent misappropriation. *See In re Cooper,* 613 A.2d 938 (D.C.1992) (six-month suspension with requirement of fitness for negligent misappropriation of client funds by attorney who admitted cocaine addiction); *In re Hines,* 482 A.2d 378 (D.C. 1984) (two-year suspension with requirement of fitness for reckless disregard resulting in the commingling and misappropriation of funds of two clients); *In re Harrison,* 461 A.2d 1034 (D.C.1983) (suspension of a year and a day with requirement of fitness for unintentional commingling and misappropriation of client's funds aggravated by attorney's initial evasion of client's request for restitution and payment by a check returned for insufficient funds).[9]

In support of its contention that a requirement of fitness places the Maryland sanction outside the range of sanctions imposed in this jurisdiction, the Board cites three recent District of Columbia cases in which attorneys who negligently misappropriated client funds were suspended for six months with automatic reinstatement. *See In re Choroszej,* 624 A.2d 434 (D.C.1992) (per curiam) (six-month

---

8. D.C.Bar R. XI, § 11(c) states:

> (c) *Standards for reciprocal discipline.* Reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence, that:
> (1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
> (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or
> (3) The imposition of the same discipline by the Court would result in grave injustice; or
> (4) The misconduct established warrants substantially different discipline in the District of Columbia; or

> (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.
> Unless there is a finding by the Board under (1), (2), or (5) above that is accepted by the Court, a final determination by a disciplining court outside the District of Columbia or by another court in the District of Columbia that an attorney has been guilty of professional misconduct shall conclusively establish the misconduct for the purpose of a reciprocal disciplinary proceeding in this Court.

9. We have stated that "in virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence." *In re Addams,* 579 A.2d 190, 191 (D.C.1990) (en banc); *accord, Hines, supra,* 482 A.2d at 386–87.

suspension for negligent misappropriation where numerous mitigating factors were cited); *In re Evans,* 578 A.2d 1141 (D.C.1990) (per curiam) (six-month suspension for negligent misappropriation where court concluded that "greater sanction [was] not required"); *In re Hessler,* 549 A.2d 700 (D.C.1988) (six-month suspension for negligent commingling and misappropriation where six mitigating factors were taken into account).

The cases cited above, *Cooper, Hines, Harrison, Choroszej, Evans,* and *Hessler,* illustrate the range of sanctions this court has imposed upon attorneys found to have negligently misappropriated client funds. The sanction imposed by the Maryland court is within this range, and therefore, we need not reach the second step of the *Garner* analysis to conclude that imposition of reciprocal discipline is appropriate in this case.[10]

Further, the facts of this case, which show that respondent was extremely slow to satisfy his client's requests for payment of the settlement proceeds and that he made his

initial payment with a check that bounced, *see Harrison, supra,* 461 A.2d at 1036, coupled with the Maryland court's conclusion that respondent's conduct was, at best, "perilously close to gross negligence," support Bar Counsel's contention that this case is more akin to *Hines* and *Harrison* than *Choroszej, Evans,* and *Hessler. See Choroszej, supra,* 624 A.2d at 436–37. That is to say, a six month suspension with proof of fitness is within the range of sanctions this Court would consider if this were a case of original jurisdiction.[11]

## III.

Respondent argues that D.C.Bar R. XI, § 11(c)(5), which provides an exception to the presumption of reciprocal discipline where it is demonstrated by clear and convincing evidence, that "[t]he misconduct elsewhere does not constitute misconduct in the District of Columbia," is applicable in this case. He contends that the Maryland court's finding that he misappropriated funds in violation of

10. The level of deference we are obliged to accord the Board's recommendations is lessened where reciprocal discipline is at issue. *See Velasquez, supra,* 507 A.2d at 106–07. Whereas in matters originating in this jurisdiction, this court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted," D.C.Bar R. XI, § 9(g), in matters involving reciprocal discipline "[t]he Court shall impose the identical discipline unless the attorney demonstrates, or the Court finds on the face of the record on which the discipline is predicated, by clear and convincing evidence, that one or more of the [exceptions to reciprocal discipline] exists." D.C.Bar R. XI, § 11(f). In reciprocal discipline cases "there is merit in the idea of granting due deference—for its sake alone—to the opinions and actions of a sister jurisdiction with respect to attorneys over whom we share supervisory authority." *Velasquez, supra,* 507 A.2d at 147.

11. The Board makes two additional arguments to support its claim that the sanctions imposed by the two jurisdictions are substantially different. First, the Board states, citing *In re Mulkeen,* 606 A.2d 136 (D.C.1992), that the Maryland sanction is substantially different because in Maryland every indefinite suspension requires a showing of fitness, while in the District the determination as to whether a showing of fitness is required is done on a case by case basis. In *Mulkeen* we

found that a sister jurisdiction's imposition of a fitness requirement for attorney *neglect* (which happened to be mandatory) was outside the range of sanctions imposed in this jurisdiction for the same misconduct. 606 A.2d at 137. *Mulkeen* is inapposite here where our case law indicates that the sanction imposed by Maryland (albeit mandatory) is within the range of sanctions we might impose under similar circumstances.

Second, the Board suggests that the fitness requirement in the District is substantially different because eighteen months may pass before a decision on an application for reinstatement is rendered here, while in Maryland *in some instances* fitness applications are not protested and granted forthwith. Although it is possible that respondent's application for reinstatement would be processed without protest by Maryland Bar Counsel, it seems unlikely in this case where Bar Counsel argued for disbarment. Although we understand the substantial financial and professional costs to attorneys who must wait many months for the issuance of decisions on fitness applications, we are not willing to dispense with the fitness requirement which is imposed for the protection of the public. It may well be that there is no justifiable reason for such delay in relation to the fitness test. Perhaps a reexamination of its procedures will enable the Bar to consider and then decide the issue with some dispatch. The procedure needs reconsideration if the delay is so great.

that jurisdiction's Rule 1.15(a) [12] (which could be proved simply by showing that the settlement checks had been negligently deposited in the law firm's operating account) did not constitute a violation of the District's rule against misappropriation in effect at the time, DR 9–103(A). The District's rule provided that "[a]ll funds of clients paid to a lawyer or law firm, *other than advances for costs and expenses,* shall be deposited in one or more identifiable bank accounts...." (Emphasis added.)

Respondent claims that his client orally authorized him to use the settlement funds as advances for costs and expenses and that, as a result, he cannot be found to have misappropriated funds under the District of Columbia rule.[13] We reject this argument.

Powell has failed to show by clear and convincing evidence that his client authorized him to use the funds as advances for costs and expenses. He complains that the Maryland court did not allow him to present evidence and create a record in support of this contention. The record of the Maryland proceedings contained in the materials before us is quite incomplete, but even if the respondent was thwarted in his efforts to reference the District of Columbia rules, he could have supplemented that record by making an offer of proof. More importantly, respondent failed to provide any evidence in support of his claim to the Board or this court. For example, he might have secured an affidavit from his client confirming his claim or prepared his own sworn statement detailing the agreement and the circumstances under which it was made. Respondent's failure to present a record upon which we might evaluate his claim is a sufficient basis upon which to reject his argument. *Cf. Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982) (stating that the "responsibility of perfecting the

record remains with appellant and 'cannot be shifted to either the trial court or [the Court of Appeals]' " (citation omitted)).

Furthermore, if we were to accept respondent's claim that he was authorized to use the settlement funds as advances for costs and expenses it would directly contradict the version of events he presented in the Maryland proceeding.[14] In Maryland, respondent represented that settlement funds had been mistakenly and erroneously deposited in his law firm's operating account. It was the Maryland court's acceptance of this version of events which prevented the court from finding intentional misappropriation for which the presumptive sanction is disbarment. *Powell, supra* note 1, 614 A.2d at 110; *accord, In re Addams, supra* note 9, 579 A.2d at 191. Respondent may not now be heard to contradict the very version of the facts which prevented him from receiving harsher discipline in the original proceeding in Maryland.

## IV.

Respondent makes several other claims in an attempt to fit his case into one of the exceptions to the rule requiring reciprocal discipline. He argues that he was deprived of due process in the Maryland proceeding and that the exception detailed at D.C.Bar R. XI, § 11(c)(1), *see* note 8, *supra,* is therefore applicable. He alleges that because he maintains his law office solely in the District and the complainant, and matters complained of, have no connection to Maryland, that the Maryland court had no authority to discipline him for infractions of its rules.

This argument is groundless. We have established the authority of this court to discipline active members of the District bar (those who maintain eligibility to engage in

---

**12.** The version of the Rule in force at the time stated:

> A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated....

**13.** Respondent admits that he could be disciplined for negligent commingling under the District of Columbia rules.

**14.** Bar Counsel contends that the Maryland court's finding that the checks received by respondent were *settlement checks* is dispositive of this issue. However, this finding would not preclude the possibility that with the client's authorization these funds were transmuted into advances for costs and expenses.

the practice of law here), who while practicing in other jurisdictions violate the ethical rules of the District. *See In re Wade,* 526 A.2d 936, 938–39 (D.C.1987), *cert. denied,* 484 U.S. 1010, 108 S.Ct. 709, 98 L.Ed.2d 659 (1988). Thus, we cannot deny the Maryland court's authority to discipline a member of its bar in this instance.

Respondent also argues that the imposition of reciprocal discipline "would result in grave injustice." D.C.Bar R. XI, § 11(c)(3). In support of this contention respondent cites *In re Miller,* 553 A.2d 201 (D.C.1989), and *In re Kent,* 467 A.2d 982 (D.C.1983), original jurisdiction cases in which this court imposed less severe disciplinary measures than those recommended by the Board, finding the offending attorneys' alcoholism and emotional instability to be mitigating factors.

Respondent presented evidence to the Maryland court regarding the severe emotional and financial stress he was under at the time of his misconduct and argues before this court that the District would have accorded greater weight to his personal circumstances in determining the appropriate discipline in his case. However, the cases on which he relies, *Miller* and *Kent,* are clearly inapposite in that the misconduct at issue in those cases did not impact the administration of justice or violate the public trust.[15] Respondent has failed to present clear and convincing evidence of grave injustice.

### V.

Finding that no exception to the imposition of reciprocal discipline has been shown by clear and convincing evidence, it is

ORDERED that respondent shall be, and hereby is, suspended from the practice of law in the District of Columbia for a period of six months with reinstatement conditioned on

respondent's demonstration of fitness. On the assumption that the affidavit of Robert D. Powell submitted to this court on August 9, 1993, correctly states that he was not required to notify any persons or return any papers pursuant to D.C.Bar R. XI, § 14, *see In re Mulkeen,* 606 A.2d 136, 137 (D.C.1992), this order shall be retroactive to that date.[16]

*So ordered.*

---

**15.** In *Miller,* the offending alcoholic attorney attempted to surreptitiously gain access to her own personnel file at her former law firm. In *Kent,* the offending attorney had an emotional breakdown in a department store and began to shoplift.

**16.** Respondent was temporarily suspended on December 28, 1992, pending final disposition of this reciprocal discipline proceeding. D.C.Bar R. XI, § 11(d). However, because he did not

comply with the requirement that he submit an affidavit to this court within ten days of his temporary suspension, D.C.Bar R. XI, § 14(f), respondent's suspension is not retroactive to that date. *See In re Robertson,* 618 A.2d 720, 726 (D.C.1993); D.C.Bar R. XI, § 16(c). Rather the suspension is retroactive to the date respondent submitted the required affidavit. *See Robertson, supra.*