In re Kathryn A. PIERSON, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 95–BG–1029.

District of Columbia Court of Appeals.

Argued Feb. 22, 1996.
Decided Feb. 28, 1997.

Abraham C. Blitzer, Washington, DC, for respondent.

Leonard H. Becker, Bar Counsel, for petitioner, Office of Bar Counsel.

Before TERRY, SCHWELB, and RUIZ, Associate Judges.

TERRY, Associate Judge:

The Board on Professional Responsibility ("the Board") has recommended that respondent be disbarred. Respondent contends that the record supports at most a finding of misappropriation resulting from simple negligence, and that, under all the circumstances, a lesser sanction should be imposed. We find her arguments without merit and accordingly adopt the recommendation of the Board.

## I. THE FACTS

The misconduct charges against respondent Pierson, a member of our bar, were based on her mishandling of funds entrusted to her by a client and on her repeated invasion of her client escrow account to pay general business expenses. After an evidentiary hearing, a hearing committee found[1] that Ms. Pierson had violated Rules 4.1(a),[2] 8.4(b),[3] and 8.4(c)[4] of the Rules of Professional Conduct, but that her actions did not constitute misappropriation or commingling in violation of Rule 1.15(a), under which she had also been charged.[5] The committee therefore recommended that Ms. Pierson be suspended from the practice of law for three years and that she prove her fitness to practice law before being reinstated. After Bar Counsel noted an exception to the hearing committee's report, the Board issued its own report, finding *inter alia* that Ms. Pierson's misconduct amounted to misappropriation and commingling, which warranted disbarment. The matter comes before us on the Board's recommendation and Ms. Pierson's exceptions.

The pertinent facts are undisputed. In December 1991 Ms. Pierson and her law partner opened an escrow account at Adams National Bank for the placement of client funds ("the escrow account"). Their law firm already had a pre-existing office operating account at the same bank. In January 1992 Ms. Pierson reclassified the escrow account to allow interest accrued on it to be handled through the IOLTA program.[6]

1. Several of Bar Counsel's proposed findings of fact were adopted by respondent. The hearing committee treated these proposed findings as stipulated facts, and so do we.

2. Rule 4.1(a) states that in the course of representing a client, "a lawyer shall not knowingly ... [m]ake a false statement of material fact or law to a third person...."

3. Under Rule 8.4(b), it is professional misconduct for a lawyer to "[c]ommit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects...."

4. Rule 8.4(c) states that it is professional misconduct for a lawyer to "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation...."

5. Rule 1.15(a) provides in part: "A lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property."

6. "IOLTA" is an acronym for "interest on lawyers' trust accounts." Since 1985, members of the District of Columbia Bar have been required to maintain separate, interest-bearing bank accounts in which they deposit "clients' funds which are nominal in amount or to be held for a short period of time...." D.C. Rule of Professional Conduct 1.15(e). The interest earned on

Some time later, Ms. Pierson appeared in the Superior Court on behalf of the defendant-tenant in *Elenar Associates Limited Partnership v. Urban Shelters & Health Care Systems, Inc.* This was a rent collection case brought by Elenar, the plaintiff-landlord. The parties reached a settlement in November 1992 under which Urban Shelters, Ms. Pierson's client, was to pay Elenar $13,500 in two equal installments of $6,750. The first payment was due on December 21, 1992, forty-five days after the signing of the agreement, and the second was due forty-five days thereafter.

On December 21 Urban Shelters drew a check in the amount of $6,750, payable to Ms. Pierson's firm, and delivered it to Ms. Pierson so that she could make the first payment on the settlement. She deposited the check in her firm's escrow account. That account, however, was also being used by Ms. Pierson for general business purposes because the bank had recently closed the firm's operating account as a result of repeated overdrafts. At the time she deposited Urban Shelters' check, the escrow account was also overdrawn.

Instead of paying Elenar with the funds provided by her client, Ms. Pierson wrote several checks on the escrow account to pay some of the operating expenses of her law firm. Ms. Pierson testified before the hearing committee that she unsuccessfully tried to reach Roy Littlejohn, the principal of Urban Shelters, to seek permission to use the funds as a loan for her firm's business expenses instead of paying Elenar as the settlement agreement required. Although she failed to reach Mr. Littlejohn, Ms. Pierson elected nevertheless to use the money as a loan, intending to obtain her client's ratification later. This decision was based on Ms. Pierson's long-standing business and personal relationship with Mr. Littlejohn, and on the fact that he had lent her money on prior occasions.

Ms. Pierson finally got in touch with Mr. Littlejohn in early January 1993. Although concerned about the potential harm to Urban Shelters, he approved the diversion retroactively and treated Ms. Pierson's use of the funds as a loan. Ms. Pierson attempted to alleviate Littlejohn's concerns by explaining that she would bear any excess costs resulting from the default in the settlement. However, she did not advise him to obtain separate counsel before approving the diversion of the funds as a loan to her, nor did she say anything to Mr. Littlejohn about the ethical implications of her conduct.

Although Urban Shelters defaulted on the initial payment of $6,750 because Ms. Pierson had used the settlement funds to pay her law firm's bills, counsel for Elenar dismissed the case on December 30, 1992, believing it was settled.[7] When Elenar still did not receive payment in January 1993, counsel for Elenar filed a motion to reopen the case. After the case was reinstated and the deadline for pretrial filings neared, the parties, through counsel, again reached a settlement. The second settlement called for a $14,000 payment from Urban Shelters to Elenar, $500 more than originally agreed upon.[8] However, Ms. Pierson did not tell Mr. Littlejohn that the original settlement had fallen through, intending instead to pay the additional $500 herself.

On March 11, 1993, Ms. Pierson falsely told counsel for Elenar that she was in possession of the settlement money. In April 1993 she further misrepresented to Elenar's counsel that the funds were in her escrow account. During this same period, Urban Shelters unknowingly defaulted on the new settlement payment date, which was March 19, 1993.[9]

those funds is then turned over to the District of Columbia Bar Foundation to be used for charitable purposes. Detailed procedures for establishing and maintaining IOLTA accounts are set forth in Appendix B to this court's Rules Governing the Bar.

7. It is not clear from the record why Elenar's counsel dismissed the case, especially since the settlement agreement conditioned dismissal "upon payment."

8. The second agreement is memorialized only in correspondence between counsel.

9. This second default by Urban Shelters caused problems for Elenar, since it faced imminent pretrial filing deadlines. Counsel for Elenar filed

By letter dated April 9, 1993, Ms. Pierson tendered to counsel for Elenar two checks to complete the revised settlement at $14,000: a certified check for $6,750 from Urban Shelters, and a non-certified check for $7,250, signed by Ms. Pierson and drawn on the escrow account. Upon receipt of the checks, counsel for Elenar again dismissed the complaint. The check from Ms. Pierson's escrow account bounced, however, and was returned to her for insufficient funds. Ms. Pierson knew at the time she tendered the check that there was not enough money in the account to pay it. Counsel for Elenar then demanded immediate payment in a letter dated May 17, but by intentionally making herself unavailable, Ms. Pierson did not make good on the check until July 1.

## II. Proceedings before the Hearing Committee and the Board

### A. *Improper Business Transaction with Client*

The hearing committee first found that the facts surrounding Ms. Pierson's actions did not establish a violation of Rule 1.8(a).[10] According to the hearing committee, not every transaction with a client requires separate counsel or the client's written consent. Citing the long-standing business and personal relationship between Mr. Littlejohn and Ms. Pierson, the prior history of loans, the relatively small amount of money involved, and Mr. Littlejohn's business sophistication, the committee determined that "there was no real threat of, or resulting injury to, the client." The Board, on the other hand, did not reach the alleged violation of Rule 1.8(a)

because it found that Ms. Pierson's use of Urban Shelters' funds was not a loan but a misappropriation.

### B. *Misappropriation and Commingling*

The hearing committee ruled in favor of Ms. Pierson on the misappropriation and commingling charges under Rule 1.15(a). Applying agency law, the committee first explained that a principal may retroactively approve the acts of an agent *ab initio*. It then held that the diversion of Urban Shelters' funds to Ms. Pierson's own use, with subsequent ratification by Mr. Littlejohn, did not constitute misappropriation with respect to Urban Shelters, Ms. Pierson's actual client.[11] The hearing committee also concluded that Bar Counsel had failed to establish by clear and convincing evidence that there was any misappropriation with respect to Elenar. Finally, the committee ruled that there was insufficient proof to support the charge of commingling because "Bar Counsel has not shown by clear and convincing evidence that any client had an interest in the escrow account during the period under review."

The Board rejected the hearing committee's legal conclusion that retroactive ratification could cure "what would otherwise be a clear misappropriation."[12] It first observed that the hearing committee had misconstrued the law of agency. While the Board agreed that a principal can retroactively ratify and thereby authorize the acts of its agent, it ruled that, for such a ratification to be effective, the agent must have been acting on

---

last-minute motions to extend those deadlines in the hope that the settlement could be preserved.

**10.** Rule 1.8(a) states:

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) The client consents in writing thereto.

**11.** In so holding, the hearing committee rejected what it characterized as "Bar Counsel's effort to alter the common law of agency by extending Code-based disciplinary decisions well beyond their stated facts." The committee distinguished the cases on which Bar Counsel relied, such as *In re Addams*, 563 A.2d 338 (1989), *overruled on rehearing en banc*, 579 A.2d 190 (D.C.1990), and *In re Vogel*, 382 A.2d 275 (D.C.1978), on the ground that they did not did not involve a client's later ratification of an attorney's misuse of client funds.

**12.** The Board also found that there was no valid prior agreement allowing Ms. Pierson to divert client funds.

behalf of the principal, and in this case Ms. Pierson was not. The Board explained:

> Respondent's withdrawal of her client's settlement funds to pay her firm's operating expenses was clearly not on her client's behalf. Furthermore, when Mr. Littlejohn gave his consent for the diversion of funds, he did so on the condition that the transaction not disturb the settlement with Elenar. This condition was not met. The settlement was undone.

Second, the Board held that the common law of agency cannot prevail over the Rules of Professional Conduct. "The Rules impose many obligations on attorneys that are beyond the demands of the common law of agency." The Board then listed several reasons why "retroactive ratification by a client should not exonerate an attorney's misappropriation":

> The disciplinary system should not place clients in a position to save their attorneys from sanctions by providing *ex post facto* approval, lest attorneys accused of violations place pressure on clients to ratify actions after the fact. This case demonstrates one of the problems with a rule that would permit such retroactive ratification: the client did not fully understand when he gave his supposed consent that his attorney had jeopardized the client's interests. Moreover, in many cases, such as this one, a third party whose consent is not sought is also at risk of harm.

The Board also rejected the hearing committee's decision on the commingling charge. In the Board's view, Urban Shelters' funds were immediately at risk when they were deposited into the escrow account because that account was being used at the same time as an operating account for Ms. Pierson's law firm. The fact that Bar Counsel failed to prove that other client funds were also in the account was irrelevant. The Board said:

> The crux of the commingling charge ... was that Urban Shelters' funds to be used

for the Elenar settlement were put into an account that was in truth the attorneys' operating account. The bank records accepted in evidence by the Hearing Committee clearly demonstrate the deposit of Urban Shelters' funds into the account, the flow of funds out of the account, and other deposits of unidentified funds. Because Respondent stipulated that the Adams escrow account was used as an operating and payroll account ... the Urban Shelters deposit alone is sufficient to constitute commingling.

For these reasons, the Board concluded that Ms. Pierson had engaged in misappropriation and commingling, in violation of Rule 1.15(a).

### C. *False Statements of Material Fact, and Conduct Involving Dishonesty, Fraud, Deceit, or Misrepresentation*

The hearing committee found that Ms. Pierson had made false statements to opposing counsel in March 1993, when she told counsel for Elenar that she had the settlement money in her possession (even though she had already spent it to pay her law firm's bills), and in April 1993, when she said that these same funds were being held in her escrow account (which was not true). The committee also ruled that Ms. Pierson had engaged in fraudulent and deceitful conduct when she tendered a bad check in apparent satisfaction of the second settlement, knowing that it would bounce, and then deliberately made herself unavailable to opposing counsel when he tried to collect the settlement payment.[13] Since Ms. Pierson filed no exception to these conclusions, the Board agreed with the hearing committee that Ms. Pierson had violated Rules 4.1(a), 8.4(b) and 8.4(c).[14]

### D. *Conduct Interfering with the Administration of Justice*

Bar Counsel alleged that Ms. Pierson had seriously interfered with the administration

---

**13.** The hearing committee rejected as "unproven" Bar Counsel's Rule 8.4(d) allegation of dishonesty in the course of the investigation. The Board noted, however, that this allegation was actually based on Rule 8.4(c), not 8.4(d).

**14.** See notes 2–4, *supra*. The hearing committee did not reach the alleged violations of Rules 5.1(a) and 5.3(a), based on the conduct of other lawyers and non-lawyers in Ms. Pierson's firm, because they were charged in the alternative with the Rule 8.4(c) violations.

of justice, in violation of Rule 8.4(d),[15] by failing to pay the settlement as she had agreed to do. According to Bar Counsel, her actions forced counsel for Elenar to move twice in the Superior Court to have the case reinstated. The hearing committee and the Board both ruled in favor of Ms. Pierson on this charge because, in the Board's words, the case law makes clear "that more is required to show a violation of the Rule than conduct by an attorney that caused a court to have to take action." Bar Counsel does not challenge this ruling.

### E. Sanction

Ms. Pierson presented mitigation evidence before the hearing committee. She testified to her alcohol dependency,[16] her commendable pro bono activities, and the financial pressures associated with an over-expanded law practice. She also fully accepted responsibility for all that had happened. The hearing committee ruled, however, that this evidence did not warrant a reduction in the sanction to be imposed.

Having found that Ms. Pierson's conduct was dishonest and that it violated Rules 4.1(a), 8.4(b), and 8.4(c), the hearing committee recommended that Ms. Pierson be suspended for three years, with a requirement that she prove her fitness to practice law as a condition of reinstatement. A majority of the Board, however, rejected this recommendation, primarily because the committee had erred in ruling that Ms. Pierson's actions did not amount to misappropriation or commingling. Following this court's decision in In re Addams, 579 A.2d 190 (D.C.1990) (en banc), which established a presumption "that in virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence," id. at 191,[17] the Board recommended that Ms. Pierson be disbarred. Board member Hallem H. Williams filed a concurring opinion in which he was joined by four other

members. In his concurrence, Mr. Williams expressed dissatisfaction with the presumption of disbarment that this court had established in Addams and suggested that the facts of this case might warrant a sanction short of disbarment if one were available. He reluctantly agreed, however, that Addams was controlling.

### III. RESPONDENT'S DISCIPLINARY VIOLATIONS

The principal issue for us to decide is whether Ms. Pierson committed misappropriation and, if so, "whether [her] conduct was blameworthy enough to require disbarment under Addams." In re Pels, 653 A.2d 388, 393 (D.C.1995). Ms. Pierson primarily contends that the Board's recommended sanction of disbarment is inappropriate because the temporary diversion of her client's funds should be viewed as the equivalent of simple negligence. She analogizes her conduct to that found in cases such as In re Cooper, 613 A.2d 938 (D.C.1992) ("Cooper II"), and In re Evans, 578 A.2d 1141 (D.C.1990), where attorneys' reasonable but mistaken beliefs that they were entitled to use client funds for their own purposes were held to have resulted in merely negligent misappropriations. In the alternative, Ms. Pierson maintains that the circumstances surrounding her "inadvertent" misappropriation were sufficiently extraordinary to warrant a sanction short of disbarment. She also maintains that her pro bono activities, her lack of a prior disciplinary record, and her cooperation with the disciplinary system are mitigating factors that justify a less severe punishment. We cannot agree.

### A. Standard of Review

■ In any disciplinary case, we must accept the Board's findings of fact "unless they are unsupported by substantial evidence of record." D.C. Bar Rule XI, § 9(g); see In re Pels, supra, 653 A.2d at 393; In re Ross, 658 A.2d 209, 210 (D.C.1995); In re Lenoir, 604 A.2d 14, 15 (D.C.1992); In re Herndon,

---

**15.** Rule 8.4(d) states that a lawyer shall not "[e]ngage in conduct that seriously interferes with the administration of justice...."

**16.** She later withdrew her claim of mitigating circumstances based on alcohol dependency.

**17.** Although in Addams we "eschew[ed] a per se rule," we held that "a lesser sanction [would be] appropriate only in extraordinary circumstances." 579 A.2d at 191.

596 A.2d 592, 597–598 (D.C.1991). The same standard applies to the Board's review of the hearing committee's findings and conclusions. The Board is required to accept the factual findings of the committee that are supported by substantial evidence in the record, viewed in its entirety. *In re Micheel*, 610 A.2d 231, 234 (D.C.1992). "However, the Board owes no deference to the hearing committee's determination of 'ultimate facts,' which are really conclusions of law." *Id.* Because the committee's conclusion that Ms. Pierson did not engage in misappropriation "was a determination of 'ultimate fact'—*i.e.,* a conclusion of law," the Board was not required to accept that finding, nor are we. *Id.*

### B. *Misappropriation*

■ Before deciding whether the sanction of disbarment is warranted, we must first determine whether Ms. Pierson intentionally misappropriated her client's funds. By arguing in her brief that the diversion of those funds was the equivalent of simple negligence, Ms. Pierson in effect conceded that her actions amounted to misappropriation; during oral argument, however, her counsel seemed less willing to acquiesce on this point. To avoid any uncertainty, we now hold that Ms. Pierson's temporary diversion of her client's funds did constitute intentional misappropriation.

On numerous occasions this court has defined misappropriation as:

> any unauthorized use of client's funds entrusted to [a lawyer], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not [she] derives any personal gain or benefit therefrom.

*In re Harrison*, 461 A.2d 1034, 1036 (D.C. 1983); *see also, e.g., In re Ray*, 675 A.2d 1381, 1386 (D.C.1996); *In re Pels, supra*, 653 A.2d at 393; *In re Marlow*, 652 A.2d 1111, 1113 n. 4 (D.C.1995); *In re Choroszej*, 624 A.2d 434, 436 (D.C.1992); *In re Evans, supra*, 578 A.2d at 1142. We have also warned

that "when client funds are deposited into an attorney's operating account ... misappropriation occurs when the balance in that account falls below the amount due to the client." *In re Micheel, supra,* 610 A.2d at 233; *accord, e.g., In re Pels, supra,* 653 A.2d at 393; *In re Ingram,* 584 A.2d 602, 603 n. 1 (D.C.1991); *In re Thompson,* 579 A.2d 218, 220 n. 5 (D.C.1990). We said in *Micheel* that "[m]isappropriation is essentially a *per se* offense; proof of improper intent is not required." *In re Micheel, supra,* 610 A.2d at 233 (citing *In re Harrison, supra,* 461 A.2d at 1036); *see also Ray,* 675 A.2d at 1386; *Pels,* 653 A.2d at 393; *Choroszej,* 624 A.2d at 436; *Evans,* 578 A.2d at 1142. Thus ignorance or a claim of "innocent" behavior is not an acceptable defense to a charge of misappropriation. *See Ray,* 675 A.2d at 1387 ("notwithstanding the lack of any proof of a venal motive, [the attorney's] conduct constituted misappropriation").

■ Given this unwavering case law, we hold that Ms. Pierson's unauthorized use of her client's settlement funds was a clear misappropriation. The facts permit no other conclusion. *See In re Hagos,* 616 A.2d 343, 345 (D.C.1992) (attorney repeatedly withdrew funds from client's liquidating account without authorization, and allowed account to fall below the amount owed to the client). Ms. Pierson diverted her client's money for her own purposes without the permission of that client. As the Board correctly stated, she violated Rule 1.15(a), which prohibits misappropriation, the moment she deposited her client's settlement money in the trust account (which she was using as her law firm's operating account) because that account was already overdrawn. The violation continued when Ms. Pierson proceeded to withdraw the balance of the client's funds without authorization in order to pay the office expenses of her law firm.[18] We conclude, therefore, that there is substantial evidence in the record to support the Board's conclusion that Ms. Pierson intentionally misappropriated her client's funds.[19]

---

**18.** We agree with the Board's rejection of the hearing committee's "agency" theory. Under *Addams* and its progeny, the authority to divert the settlement funds could not be granted retro-

actively, and Ms. Pierson failed to obtain such permission in advance.

**19.** The Board also held that Ms. Pierson violated the rule against commingling when she deposit-

## IV. SANCTION

■ "Although the final determination of a sanction rests with [this] court, considerable deference is given to the Board's recommendation." *In re Lenoir, supra,* 604 A.2d at 15; *accord, e.g., In re Ross, supra,* 658 A.2d at 210; *In re Hutchinson,* 534 A.2d 919, 924 (D.C.1987) (en banc). Indeed, our rules require us to "adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar Rule XI, § 9(g)(1).

■ In general, our choice of an appropriate sanction is guided by factors that include "the nature of the violation, aggravating and mitigating circumstances, the absence or presence of prior disciplinary sanctions, the moral fitness of the attorney, and the need to protect the legal profession, the courts, and the public." *In re Lenoir, supra,* 604 A.2d at 15 (citations omitted). The purpose of imposing sanctions, after all, is not to punish the attorney but to protect the public and the courts, to maintain the integrity of the profession, and to deter other attorneys from engaging in similar misconduct. *See, e.g., In re Reback,* 513 A.2d 226, 231 (D.C.1986) (en banc). Thus we normally "evaluate each case on its particular facts ... taking into consideration such factors as mitigating and aggravating circumstances." *In re Ross, supra,* 658 A.2d at 211 (citations omitted).

■ In cases of intentional misappropriation, however, we are bound by our en banc decision in *Addams,* in which we held that "in virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence." *In re Addams, supra,* 579 A.2d at 191; *see also, e.g., In re Pels, supra,* 653 A.2d at 388–389; *In re Micheel, supra,* 610 A.2d at 236; *In re Thompson,* 583 A.2d 1006, 1008 (D.C.1990). We explained in *Addams*

that a sanction as severe as disbarment is warranted in cases involving misappropriation of client funds because such violations "strike at the core of the attorney-client relationship" by undermining the public's faith that attorneys will fulfill their duties as fiduciaries in handling funds entrusted to them by their clients. 579 A.2d at 198–199; *see In re Dulansey,* 606 A.2d 189, 190 (D.C.1992). For this reason, "[t]he appearance of a tolerant attitude toward known embezzlers would give the public grave cause for concern and undermine public confidence in the integrity of the profession and of the legal system whose functioning depends on lawyers." *Addams,* 579 A.2d at 193; *see Dulansey,* 606 A.2d at 191 & n. 5. Given our conclusion that Ms. Pierson's actions amounted to intentional misappropriation, we hold that the sanction recommended by the Board, disbarment, is required.

Ms. Pierson strives to overcome this presumptive sanction of disbarment by maintaining, first, that the conversion of her client's settlement funds was inadvertent, and second, that the circumstances surrounding this "accidental" misappropriation were extraordinary enough to justify a more lenient penalty. For the following reasons, we do not agree.

### A. *Simple Negligence*

■ "While insufficient to defeat the charges, negligent conduct may temper the sanction imposed." *In re Choroszej, supra,* 624 A.2d at 437 (six-month suspension for negligent misappropriation with numerous mitigating factors); *see also, e.g., In re Ray, supra,* 675 A.2d at 1387–1389 (six-month suspension, with reinstatement conditioned on making restitution, when attorney "was unaware that he could not legally accept estate checks or withhold estate assets in payment of his fee"); *In re Harrison, supra,* 461 A.2d at 1036 (suspension of a year and a day for inadvertent commingling and misappropriation of client's funds, aggravated by attor-

---

ed her client's funds in an account that she was also using as a general business account for her firm. *See In re Micheel, supra,* 610 A.2d at 233 ("Depositing client funds into an attorney's operating account constitutes commingling" (citation

omitted)). Given our holding that she engaged in misappropriation, which in itself warrants disbarment, we need not decide whether there was also commingling.

ney's initial evasion of client's request for restitution and by payment with check that later bounced); *In re Evans, supra,* 578 A.2d at 1141 (six-month suspension for accidental misappropriation where court concluded that "greater sanction [was] not required"); *In re Hessler,* 549 A.2d 700, 701–703 (D.C.1988) (six-month suspension for negligent commingling and misappropriation, with six mitigating factors); *In re Hines,* 482 A.2d 378 (D.C.1984) (two-year suspension for reckless commingling and misappropriation of funds of two clients). The distinguishing characteristic of our cases involving simple negligence (as opposed to intentional misappropriation) is that the attorneys were acting "pursuant to 'a truly held, albeit inaccurate, understanding' of [their] right to withdraw the funds...." *Cooper II, supra,* 613 A.2d at 939 (quoting *In re Cooper,* 591 A.2d 1292, 1298 (D.C.1991) ("*Cooper I* ")); *see also, e.g., In re Pels, supra,* 653 A.2d at 396; *In re Evans, supra,* 578 A.2d at 1141 (attorney's misappropriation was merely negligent when he acted with the "objectively reasonable, albeit erroneous, belief" that he was authorized to do so).

Viewing the record in its entirety, we can see no evidence that Ms. Pierson's misappropriation was inadvertent or the result of simple negligence. While the Board acknowledged that "the *Addams* rule stands in the way of recognizing that there are some aspects of Ms. Pierson's situation that would justify a sanction on the lower end of the spectrum," it also found that her misconduct was knowing and intentional. As the Board said in its report:

> While we are willing to believe that Respondent had a good faith belief when she took the funds ... that Mr. Littlejohn would approve her use of the funds as a loan, by taking them without prior consent she knowingly took away his ability to refuse. It was six months before Respondent was able to repay those funds and complete the settlement. If this level of intent is the equivalent of simple negligence, the exceptions would swallow the *Addams* rule.... Respondent used client funds to keep her practice afloat during difficult economic times. Her client's interests were jeopardized, even if he did not

complain. Respondent misled opposing counsel, and put an opposing party and the court to delay and unnecessary process to set matters right.

Ms. Pierson's reliance on cases such as *Evans* and *Cooper II* is misplaced for the paramount reason that her actions were clearly intentional. Unlike the attorneys in those cases, Ms. Pierson never entertained a "good faith belief" that she was entitled to withdraw the funds to pay her law firm's bills. At best, she harbored a good faith belief that her client would retroactively approve the diversion as a loan. This is not enough to establish simple negligence. Ms. Pierson could not have reasonably believed the funds were hers to "borrow" because they had been entrusted to her for the specific fiduciary purpose of paying the settlement. Her misappropriations were therefore "both intentional and deliberate, as [she] engaged in a pattern of dishonest handling of [her] client's funds...." *In re Hagos, supra,* 616 A.2d at 346.

We recognize that "disbarment in a case such as this may seem to be a harsh sanction when compared with sanctions for other violations involving arguably more egregious conduct." *In re Micheel, supra,* 610 A.2d at 236 (citations omitted). However, we are equally mindful that "where client funds are involved, a more stringent rule is appropriate" to ensure that "there not be an erosion of public confidence in the integrity of the bar." *In re Addams, supra,* 579 A.2d at 197–198. Furthermore, the District of Columbia has only one set of Rules of Professional Conduct, and they apply equally to all lawyers. *See In re Roundtree,* 467 A.2d 143, 147 (D.C.1983). Evidence that would permit a deviation from the *Addams* rule is simply not present in this case.

### B. *Extraordinary Circumstances*

Ms. Pierson's alternative argument, that the circumstances surrounding her misconduct were sufficiently extraordinary to justify a sanction short of disbarment, is without merit. She claims that her "inadvertent" misappropriation, when coupled with her past history of *pro bono* work, the absence of a prior disciplinary record, and her forth-

rightness with the Board and the hearing committee, should be sufficient to mitigate the penalty that we impose. While we are surely sympathetic to Ms. Pierson's situation (as were both the Board and the hearing committee), the events surrounding her misconduct were not what was contemplated by this court when it spoke of "extraordinary circumstances" in the *Addams* decision.

In *Addams* and other misappropriation cases, we have said that a sanction less than disbarment is appropriate "only in extraordinary circumstances." 579 A.2d at 191; *see also Cooper I, supra,* 591 A.2d at 1297. We have also remarked that "mitigating factors of the usual sort, *see, e.g., In re Reback,* [513 A.2d at 233,] will suffice to overcome the presumption of disbarment only if they are especially strong and, where there are aggravating factors, they substantially outweigh any aggravating factors as well." *Addams,* 579 A.2d at 191. The *Reback* factors "of the usual sort" include (1) an admission of wrongdoing, (2) full cooperation with the disciplinary authorities, (3) prompt return of the disputed funds, and, most importantly, (4) an unblemished record of professional conduct. *Reback,* 513 A.2d at 233. Under this imposing standard, we have found "extraordinary circumstances" in only one situation: where the attorney is suffering from a disabling addiction, such as chronic alcoholism,[20] and the addiction is shown to have been the cause of the misconduct. *See In re Kersey,* 520 A.2d 321, 326–327 (D.C.1987); *In re Temple,* 596 A.2d 585, 589–591 (D.C.1991); *cf. Cooper I, supra,* 591 A.2d at 1296–1297 (attorney's addiction to cocaine was not shown to be the cause of his misconduct). In *Addams* we recognized that other cases might present "other circumstances calling for a lesser sanction in the future." 579 A.2d at 191. We conclude, contrary to Ms. Pierson's argument, that this is not one of those other cases.

Although Ms. Pierson has presented some evidence in mitigation, we do not find it persuasive, let alone extraordinary. Nor does this evidence substantially outweigh the aggravating factor of dishonesty that is present here. As even she acknowledges, Ms. Pierson intentionally deceived counsel for Elenar on two separate occasions, and she failed to disclose important information to Mr. Littlejohn concerning the status of the settlement funds. Ms. Pierson also avoided Elenar's payment demands for several weeks by rendering herself unavailable. *See In re Powell,* 646 A.2d 340, 343 (D.C.1994) ("respondent was extremely slow to satisfy his client's requests for payment of the settlement proceeds"). When she finally did pay Elenar pursuant to the settlement agreement, Ms. Pierson did so with two checks, one of which she knew would bounce. *See id.* (attorney "made initial payment with a check that bounced"). Although Ms. Pierson's dishonesty may not have injured her client in the long run, it surely harmed Elenar's pecuniary interests.

The mitigating circumstances offered by Ms. Pierson are akin to those proffered by the respondent in *In re Robinson,* 583 A.2d 691 (D.C.1990), where they were offset by the aggravating factor of dishonesty. We said in that case:

> Given the holding of *Addams,* the mitigating factors in this case—the relatively small amount of money, the relatively short period of time during which the client was denied the misappropriated funds, the absence of financial harm to the client, the fact that the misappropriation involved a single client, the relative inexperience of respondent, the absence of a prior disciplinary record, and the character testimony offered on respondent's behalf—are insufficient to overcome the presumption of disbarment.... Even with a stronger showing of mitigating factors, the aggravating factors found by the Board, including the incident[ ] of knowing dishonesty ... make clear his failure to overcome the presumption.

*Id.* at 692 (citation omitted). The factual similarities between this case and *Robinson* are compelling. Moreover, Ms. Pierson's belief that her past relationship with Mr. Little-

---

**20.** As we pointed out in note 16, *supra,* Ms. Pierson initially presented but later withdrew a claim of alcohol dependency.

john entitled her to divert the settlement money is of no help to her. *See In re Herndon,* 596 A.2d 592, 598 (D.C.1991) (attorney disbarred despite his strong belief that he should have been compensated for services rendered). In light of *Robinson* and *Addams,* we must conclude that Ms. Pierson's situation is not sufficiently extraordinary to warrant a lesser sanction than the one recommended by the Board.

It is therefore ORDERED that respondent, Kathryn A. Pierson, shall be disbarred from the practice of law in the District of Columbia, effective thirty days from the date of this opinion. We call her attention to D.C. Bar Rule XI, § 14(g), requiring the filing of an affidavit containing certain information, and to Rule XI, § 16(c), setting forth the consequences of a failure to file the affidavit within the time prescribed by section 14(g).

SCHWELB, Associate Judge, with whom Associate Judge RUIZ joins, concurring:

In light of *In re Addams,* 579 A.2d 190 (D.C.1990) (en banc), disbarment is the appropriate sanction in this case. I therefore join the opinion of the court. I dissented in *Addams,* however, because

Addams' disbarment [was] very harsh medicine when compared with the far less draconian sanctions imposed in other recent cases in which the attorney's conduct was at least as dishonorable.

*Id.* at 209 (citations omitted).

My reaction to the present case is very similar to my assessment of *Addams.* I continue to be uncomfortable with what I view as the far too inflexible rule there enunciated. In a nutshell, we are too harsh in this kind of case and too lenient with attorneys who lie under oath, *see In re Hutchinson,* 534 A.2d 919 (D.C.1987) (en banc), or engage in fraudulent concealment of clients' assets, *see In re Sandground,* 542 A.2d 1242 (D.C.1988) (per curiam), or engage in a widespread and persistent pattern of ethical violations, including several misappropriations of client funds, but blame it on alcoholism. *See In re Kersey,* 520 A.2d 321, 323–24 (D.C. 1987).

In the present case, Mr. Hallem H. Williams, a lay member of the Board on Professional Responsibility, has written an excellent concurring opinion, which has been joined by four other members of the Board. Mr. Williams' views thus represent those of a majority of the Board, and they also reflect my own assessment. A copy of Mr. Williams' opinion is attached hereto.

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

IN THE MATTER OF KATHRYN PIERSON, RESPONDENT

Bar Docket No. 214–93, et al.

### CONCURRING OPINION OF HALLEM H. WILLIAMS

I reluctantly concur with the majority's recommendation that Respondent be disbarred for misappropriation of client funds. The majority's recommendation is compelled by decisions of the District of Columbia Court of Appeals, holding that disbarment must be the sanction for misappropriation except in rare instances of "simple negligence." I write, as one of the Board's public members, to express my discomfort with the application of the Court's rule of presumptive disbarment, and its application, in a case such as this, where the misconduct, albeit serious, is accompanied by substantial mitigating factors and is not so heinous as to warrant the same sanction meted out to the venal attorney/thief.

The misconduct here occurred in the context of a relationship where Respondent was periodically given loans by her client to assist her with office operating expenses; where her client retroactively approved her use of the funds; and where the funds were ultimately repaid. While these factors may be unavailing as a defense, they should be considered in mitigation. In addition, Respondent's lack of a prior record of discipline, her *pro bono* activities, and her "refreshing" and "commendable" candor before the Hearing Committee all compel consideration of a lesser sanction.

Public confidence in the workings of the disciplinary system is not bolstered by the mechanical application of an automatic rule of disbarment in misappropriation cases. Rather, the public, and ultimately justice, are served by a process that treats transgressors fairly—by meting out a sanction appropriate to the facts of the case. In this instance, the facts would, in my view, compel a sanction short of disbarment. Because the option of recommending a lesser sanction is apparently not available to the Board, I am compelled to concur, albeit with trepidation, in the recommendation of the majority that Respondent be disbarred.

Date: August 3, 1995

Mr. McKAY, Mr. HOWARD, Ms. ZUMAS, and Mr. REZNECK join in this opinion.