**In re Jesse H. INGRAM, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 90–909.**

District of Columbia Court of Appeals.

Submitted Dec. 4, 1990.

Decided Jan. 11, 1991.

Before TERRY and FARRELL, Associate Judges, and MACK, Senior Judge.

PER CURIAM:

The Board on Professional Responsibility has recommended that respondent be publicly censured based upon the finding of a Hearing Committee, which the Board accepted, that respondent engaged in commingling, DR 9–103(A), by depositing into his personal bank account a check for $6,000 issued to himself and his client in settlement of a personal injury matter. Bar Counsel does not oppose that recommendation. We accept the Board's findings and recommendation, although we think the conduct in this case comes exceedingly close to deserving the imposition of discipline beyond a public censure. We likewise accept the findings of the Board that respondent's conduct did not involve dishonesty, DR 1–102(A)(4), or misappropriation, *see In re Thompson*, 579 A.2d 218, 220 n. 5 (D.C.1990), and that respondent did not fail to make prompt delivery of funds to the client upon request, in violation of DR 9–103(B)(4).

The Hearing Committee found, and respondent does not dispute, that he was retained to represent the present client in a personal injury action in return for a fee of one-third of any settlement offered. In December 1987, a settlement check in the matter was issued by an insurance company payable to respondent and the client. On January 11, 1988, respondent deposited the check in his personal bank account, which contained funds other than client funds and was also used to pay his personal expenses. The client was not informed of the deposit and did not consent to it. In February 1988, the client received a check for $2,000 from appellant drawn on this account, and in early May 1988 she received a similar check for $1,000, leaving a balance owed to her of $1,000.

Respondent testified that he attempted, through his legal assistant, to deliver the remaining $1,000 to the client around the end of May but was unsuccessful. He did not write and explain to the client that the money was available, nor did he redeposit the money in the bank and send the client a check. Instead, according to respondent's part-time secretary, in late May or early June 1988 the secretary received an envelope from respondent's legal assistant containing the undelivered $1,000. She stapled the envelope into the client's file kept in a file cabinet in respondent's office. In July or August 1988, the secretary checked the file and saw that the envelope was "still there stapled." The Hearing Committee credited the secretary's testimony, and the Board on Professional Responsibility likewise found that "Bar Counsel failed to present any basis for discrediting [the secretary's] testimony."

In October 1988, respondent established a trust account but did not place the $1,000 being held for the client into the account.

In the beginning of 1989, respondent sent the client the remaining $1,000 of the settlement due her.

On these facts, and in view of the deference we accord the Board's findings, D.C.Bar R. XI, § 9(g), we accept the conclusion that Bar Counsel did not establish by clear and convincing evidence that respondent engaged in dishonesty or misappropriation. Crediting the secretary's testimony, the Hearing Committee—and the Board—declined to draw the inference of dishonesty that we have said properly may be drawn from an attorney's unexplained (or inadequately explained) taking of a client's funds without authorization for a significant period of time and without keeping proper records. *In re Thompson,* 579 A.2d at 222. As in *In re Jones,* 521 A.2d 1119 (D.C.1986), the Committee and the Board accepted respondent's explanation as sufficient to counter the inference of dishonesty. Further, although the balance in respondent's bank account fell below $1,000 in July 1988,[1] the secretary's testimony that respondent kept the money owed to the client intact in the client's file is also sufficient to negate a finding of misappropriation.[2]

With respect to sanction, the Board concluded that its finding of simple commingling without misappropriation warranted a recommendation of public censure, consistent with the discipline imposed by this court in previous cases involving similar conduct. *See In re Gilchrist,* 488 A.2d 1354 (D.C.1985); *In re Artis,* No. M–103–81 (D.C. February 25, 1982). In keeping with the rule that we "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted," D.C.Bar R. XI, § 9(g), we adopt this recommendation as well, although we do so with considerable hesitation. In *In re Hessler,* 549 A.2d 700 (D.C.1988), we "emphasize[d] the ban against commingling to alert the bar that in future cases of even 'simple commingling,' a sanction greater than public censure may well be imposed." *Id.* at 703. Moreover, we share the Hearing Committee's evaluation of the seriousness of respondent's conduct:

> Respondent placed his client's funds at risk for an extended period of time first by keeping them in his personal bank account for approximately six months and then in a file cabinet. This improper treatment continued even after Respondent was aware of a complaint to Bar Counsel involving his handling of the matter and, more significantly, even after he established a trust account for other client funds.

It should be self-evident that clients are entitled to more scrupulous care of funds entrusted to an attorney than is demonstrated by this case.

Nevertheless, the Board pointed out that the actual commingling by respondent—the deposit of the funds in his personal bank account—ended well before issuance of this court's admonition in *Hessler* regarding future cases of commingling. Moreover, the Board's disagreement with the Hearing Committee's recommendation of a brief suspension was premised partly on its rejection of the additional violation found by the Committee, *viz.,* failure to promptly deliver funds. See note 2, *supra.* In view of these facts and the Committee's additional findings that respondent has no prior disciplinary record, had had only limited experience in handling personal injury cases, and inflicted no ultimate financial

---

**1.** "Misappropriation ... may include merely 'allowing the account balance ... to fall below the amount of ... client's funds in the account.'" *Thompson,* 579 A.2d at 220 n. 5 (citation omitted).

**2.** We further accept the Board's finding—endorsed by Bar Counsel at the hearing committee level—that respondent had not failed to promptly pay or deliver client funds, in view of testimony that at some point after respondent made the first two payments, the client told him to "keep" the final $1,000 until it could be determined how her medical bills would be paid. There was evidence that respondent engaged in protracted discussions with the insurance carrier's claims adjuster and, on learning that his client's delinquent application for Personal Injury Protection (PIP) benefits would be accepted, disbursed the $1,000 in question to the client.

harm on the client, we accept the Board's recommended disposition.

Accordingly, it is

ORDERED that, pursuant to D.C.Code § 11–2502 (1989), respondent, Jesse Ingram, is formally censured.