**In re Bryan S. ROSS, Respondent,**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 94–BG–22.**

District of Columbia Court of Appeals.

Argued Nov. 4, 1994.

Decided May 18, 1995.

Robert F. Condon, Washington, DC, for respondent.

Julia L. Porter, Asst. Bar Counsel, with whom Leonard H. Becker, Bar Counsel, Washington, DC, was on the brief, for petitioner, the Office of Bar Counsel.

Before TERRY and SCHWELB, Associate Judges, and NEWMAN, Senior Judge.

TERRY, Associate Judge.

The Board on Professional Responsibility has recommended that respondent, a member of our bar, be suspended from the practice of law for thirty days for violating Rule 1.15(a) of the Rules of Professional Conduct, which prohibits commingling funds, and Rule 1.15(b), which requires an attorney to advise a third party of settlement proceeds in his or her possession and to pay over those proceeds promptly upon settlement. The hearing committee, concluding that there were mitigating circumstances, proposed that respondent be publicly censured. The Board agreed with the hearing committee's findings of disciplinary violations but found no mitigating circumstances. It therefore recommended, in light of this court's prior warnings against commingling, that respondent be suspended for thirty days. We hold that the Board's findings are supported by the evidence and adopt its recommendation.

I

Respondent Ross, a sole practitioner in the District of Columbia since 1980, practices law primarily in the area of bankruptcy, but occasionally he represents clients in personal injury cases. In January 1989 Tyrone Jenkins retained Mr. Ross to represent him in connection with a personal injury claim arising from an automobile accident. They entered into a contingent fee agreement whereby Jenkins agreed to pay Ross a percentage of any settlement or judgment. They also signed an "Authorization and Assignment" form authorizing Mr. Ross to pay the bill of W.S. Medical Systems, Inc. ("W.S. Medical"), a provider of medical services, from the pro-

ceeds of any settlement or judgment received on behalf of his client.

In May 1991 Mr. Ross settled Mr. Jenkins' claim for $5500.00 and deposited the settlement check in his general operating account. A few days later Ross sent Jenkins a check for his share of the settlement, after making deductions for attorney's fees, expenses, and $1314.00 for the money still owed to W.S. Medical. Ross then gave the file to his secretary with instructions to draft a letter and prepare a check to W.S. Medical in the amount of $1314.00. The secretary failed to do so, however, and W.S. Medical was not informed of the settlement.

On November 14, 1991, Pamela Malott, a representative of W.S. Medical, called Ross' office and was told by Ross' secretary that the Jenkins case had been "settled, but just recently." On several occasions during the next few weeks, Ms. Malott called Mr. Ross' office and was told either that Mr. Ross was out and would call back or that the matter was "being taken care of." Sometime in the latter part of November, Mr. Ross became aware that W.S. Medical had not yet received payment, and on December 18 he drafted and signed a letter to accompany a check for $1314.00 to W.S. Medical. He gave the letter to his secretary, along with other bills that were to be paid, but the letter was never sent; instead, it was placed in Jenkins' file, which was subsequently mislaid.

On January 13, 1992, Ms. Malott spoke directly with Mr. Ross, who told her that he thought the check had been mailed, that he would look into the matter, and that someone would call her back. Mr. Ross then asked his secretary to verify that the check had been sent. The secretary never reported back to Mr. Ross, however, and neither he nor his secretary called W.S. Medical with an explanation. On February 14, after further unsuccessful requests for the check, W.S. Medical filed a complaint with Bar Counsel. W.S. Medical finally received a check for $1314.00 from Mr. Ross on April 6.

Before the hearing committee, Mr. Ross testified that he had regularly maintained escrow accounts for his bankruptcy clients, but that he was unaware of any rule requiring him to maintain a separate account for small sums from which he intended to make an immediate disbursement of funds. He also said that his failure to send the check promptly to W.S. Medical was a clerical oversight. He stated that the volume of calls and work he handled each day forced him to rely heavily on his secretary to perform administrative tasks and that she had competently handled such tasks in the past. He admitted knowing that his secretary was suffering from medical and emotional problems at the time, but he did not believe that these problems were affecting her ability to perform her duties. He maintained that his failure to send the money to W.S. Medical was wholly unintentional and that he had not acted dishonestly.

The hearing committee nevertheless found that Mr. Ross had intentionally commingled funds and that he had failed to pay a third party promptly, in violation of Rules 1.15(a) and 1.15(b). The committee recommended that he be publicly censured.[1] The Board, although agreeing with the committee's findings of fact and conclusions of law, recommended that Ross be suspended for thirty days, basing its recommendation on this court's prior decisions in two commingling cases, *In re Hessler*, 549 A.2d 700 (D.C.1988), and *In re Ingram*, 584 A.2d 602 (D.C.1991).

## II

In any disciplinary case, we must accept the Board's findings of fact "unless they are unsupported by substantial evidence," and we must adopt the Board's recommended sanction "unless to do so would foster a tendency toward inconsistent dispositions...." D.C.Bar R. XI, § 9(g). Although the ultimate choice of a sanction rests with this court, we are obliged to "respect the Board's sense of equity in these matters unless that exercise of judgment proves to be unreasonable." *In re Smith*, 403 A.2d 296, 303 (D.C.1979); *accord, e.g., In re Hutchin-*

---

1. Bar Counsel had also argued that Mr. Ross had failed to exercise proper supervision over his employee. The hearing committee rejected this argument, finding that, for the most part, Ross' office procedures were effective.

son, 534 A.2d 919, 924 (D.C.1987) (en banc); *In re Alexander,* 466 A.2d 447, 452 (D.C. 1983). In determining the appropriate sanction, therefore, we will evaluate each case on its particular facts, *In re Hutchinson, supra,* 534 A.2d at 924, taking into consideration such factors as mitigating and aggravating circumstances. *In re Haupt,* 422 A.2d 768, 771 (D.C.1980).

Several years ago, in *In re Hessler,* this court emphasized the seriousness of commingling a client's funds with a lawyer's funds and warned the bar that "in future cases of even 'simple commingling,' a sanction greater than public censure may well be imposed." 549 A.2d at 703. We explained that the purpose of the rule against commingling was not only to prevent the more serious offense of misappropriation, but also to avoid the possibility of unintentional loss of a client's funds due to circumstances beyond the control of the attorney. *Id.* at 702. As we said in an earlier case, "[i]t strains common sense to think that [an experienced practitioner] would be unaware of the prohibition against commingling," and in any event ignorance is not a defense to a commingling charge. *In re Harrison,* 461 A.2d 1034, 1036 n. 3 (D.C.1983). Mr. Ross' argument essentially ignores the warning we gave in *Hessler.* He claims that despite his commingling the funds, W.S. Medical's money was never at risk because he always maintained a substantial balance in his operating account. Relying on *In re Ingram, supra,* he argues that his failure to pay the medical bill promptly was the result of a clerical oversight, rather than dishonest conduct, and urges us to impose the lesser sanction of public censure. Because *Ingram* is distinguishable on its facts, and because the rule against commingling does not require proof of dishonesty, we find this argument unpersuasive.

In *Ingram* an attorney deposited a settlement check in his personal account but, because of an oversight on the part of his staff, failed to deliver the client's portion promptly to the client. In that case we deferred to the Board's conclusion that the attorney had not misappropriated the funds or otherwise acted dishonestly and adopted its recommendation of public censure. We did so, however, with "considerable hesitation" in light of our previous warning in *Hessler,* and stated that "the conduct in this case comes exceedingly close to deserving the imposition of discipline beyond a public censure." *Ingram, supra,* 584 A.2d at 603.

The instant case is distinguishable from *Ingram* in two important respects. First, in *Ingram* the Board noted that the actual commingling by the attorney had ended well before this court's admonition in *Hessler* about future cases. Here, however, Mr. Ross' misconduct took place more than two and a half years after *Hessler,* and *Hessler* makes clear that the "action [of commingling] alone puts the client's funds at risk, regardless of the adequacy of the balance." 549 A.2d at 701–702 (footnote omitted). Mr. Ross' argument, therefore, that the client's funds were not at risk because he maintained a substantial balance in his account is unavailing.

Second, *Ingram* was a simple commingling case, involving no additional disciplinary violations. The Board's decision in *Ingram* to reject the hearing committee's recommendation of a brief suspension "was premised partly on its rejection of the additional violation found by the Committee, *viz.,* failure to promptly deliver funds." 584 A.2d at 603. In this case, by contrast, the Board agreed with the hearing committee that, in addition to commingling, Mr. Ross had violated Rule 1.15(b) by failing to deliver funds promptly to a third party. The Board observed that although there was no bright-line test as to what constitutes "prompt" payment, Ross' eleven-month delay was not prompt and had not been mitigated by an acceptable excuse. We agree with the Board. The record shows that Ms. Malott from W.S. Medical contacted Mr. Ross' office at least eight times to inquire about the payment of its bill, and by his own admission Mr. Ross knew in late November—six months after the settlement—that W.S. Medical had not received payment. Moreover, on January 13, 1992, more than a month before W.S. Medical filed its complaint, Ms. Malott spoke directly with Mr. Ross and alerted him once again that the check had not arrived. Having been given

such notice, Mr. Ross could have and should have taken more aggressive steps to make sure that the check was sent as soon as possible.

Mr. Ross urges us to consider mitigating circumstances and the remedial steps he took to ensure that this type of situation will not occur in the future.[2] We find no mitigating circumstances that would warrant a lighter sanction, and we agree with the Board that Ross' remedial action was too little and too late.

We are satisfied that the Board's recommendation of a thirty-day suspension is reasonable and consistent with our prior decisions in *Hessler* and *Ingram*. Given the deference that we must accord to the Board's findings, and in light of our admonition to the bar almost seven years ago in *Hessler*, we see no basis for leniency. Accordingly, we adopt the Board's recommendation.

It is therefore ORDERED that respondent, Bryan S. Ross, shall be suspended from the practice of law in the District of Columbia for thirty days, effective thirty days from the date of this opinion. Respondent's attention is directed to Rule XI, § 14(f) of this court's Rules Governing the Bar, which requires the filing of an affidavit containing certain information within ten days, and to Rule XI, § 16(c), which outlines the consequences of a failure to file that affidavit timely.

---

**2.** Ross notes that he has opened an escrow account, has revised his office procedures, and has attended classes in professional responsibility.