In re Lucy R. EDWARDS, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 00–BG–552.

District of Columbia Court of Appeals.

Argued March 20, 2001.
Decided Oct. 3, 2002.

Joan A. Burt, Crofton, MD, for respondent.

Ross T. Dicker, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before TERRY, FARRELL, and GLICKMAN, Associate Judges.

TERRY, Associate Judge:

The Board on Professional Responsibility ("the Board") recommends that respondent, Lucy Edwards, be disbarred. The proposed sanction comes after the Board's hearing committee found, *inter alia,* that Edwards' handling of client funds constituted commingling and reckless misappropriation in violation of Rule 1.15(a) of the District of Columbia Rules of Professional

Conduct.[1] The Board adopted the hearing committee's findings and agreed with the hearing committee's recommended sanction of disbarment. The matter comes before us on Ms. Edwards' exceptions to the Board's recommendation.

Edwards contends that the Board's findings of misappropriation were not supported by substantial evidence and that, given the circumstances of her case, the recommended sanction of disbarment was unwarranted. We agree with Edwards that some of the Board's findings of misappropriation were not supported by substantial evidence. Because the Board's finding of recklessness was based in part on its determination that Edwards misappropriated certain funds which we conclude she did not misappropriate, we remand this case to the Board with directions to reconsider whether the severe sanction of disbarment is warranted in light of our ruling.[2]

### I. FACTUAL BACKGROUND

Lucy Edwards was admitted to the bar of the United States District Court for the District of Columbia on March 5, 1965, and thus was automatically enrolled as a member of the District of Columbia Bar when it was created in 1972, pursuant to the Court Reorganization Act of 1970. *See* D.C.Code § 11–2501(c) (2001).[3] She has practiced law continuously since that time and has no prior disciplinary record.

Ms. Edwards first came to the attention of Bar Counsel in 1996 after the District of Columbia Bar received notice that a check she had written to Ford Motor Credit Corporation had been returned by her bank for insufficient funds. Bar Counsel then began reviewing Ms. Edwards' bank records and, finding indications of professional misconduct, filed charges against her. The charges stemmed from Ms. Edwards' handling of the funds of four clients during the summer of 1996. She managed these funds by using two checking accounts. One was the operating account for her law practice (the "operating account"), and the second was an escrow account intended for client funds (the "escrow account").

Since 1992, Edwards had been representing Reverend Robert Ansah in connection with disputes that he was having with the Washington Gas Light Company over

---

1. The hearing committee also found that Bar Counsel had failed to prove by clear and convincing evidence a second count of misconduct against Edwards, except as to a failure by Edwards to provide her client with a writing setting forth the rate or basis of her fee, in violation of Rule 1.5(b). That count and the alleged violation played no part in the hearing committee's or the Board's recommendation of disbarment, and therefore we do not address it.

2. Our decision in this case is based entirely on the record before us and on what we regard as evidentiary deficiencies in that record. It should not be regarded in any way as a modification of, or a retreat from, the rule we laid down in *In re Addams*, 579 A.2d 190, 191 (D.C.1990) (en banc), requiring disbarment for non-negligent misappropriation in all but "extraordinary circumstances."

3. Edwards argued before the Board, and argues again before this court, that because she was "automatically enrolled" in the District of Columbia Bar under section 11–2501(c) and not "admitted" under section 11–2501(a), she is not subject to the disciplinary authority of the Board. The Board rejected that argument, and so do we. The fact that Edwards was "automatically enrolled" in the unified Bar upon its creation rather than "admitted" in the normal fashion is of no consequence to the Board's disciplinary authority over her. *See* D.C.Code § 11–2501(c) (persons automatically enrolled "shall be subject to [the Board's] jurisdiction"); D.C. Bar Rule XI, § 1(a) ("All members of the District of Columbia Bar ... are subject to the disciplinary jurisdiction of this Court and its Board on Professional Responsibility").

gas bills. On June 13, 1996, Ms. Edwards received and deposited into her operating account a check for $1,641.61 from Reverend Ansah which was intended to help satisfy a $1,696.80 default judgment that Ansah owed to Washington Gas. On June 18, before any payments were made to or on behalf of Reverend Ansah, the balance in the operating account fell to minus $103.60.[4]

Also in June of 1996, Ms. Edwards represented Joseph Kim in a personal injury case and obtained a $5,500 settlement in his favor from State Farm Insurance Company. On June 19, 1996, Edwards received the settlement check, which was payable to herself and Kim, and deposited it in her operating account. Ms. Edwards testified that she deposited the check in that account because Mr. Kim wanted the money quickly, and that use of the operating account enabled her to disburse the money to him immediately. This deposit brought the operating account balance to $5,396.40. That same day, Edwards transferred $4,000 from the operating account to the escrow account, noting "Kim Settlement" on the "memo" line. This transfer brought the escrow account balance to $5,830, but allowed the balance in the operating account to fall below the settlement amount owed by Reverend Ansah. Edwards testified that she left $1,500 of the Kim settlement proceeds in her operating account to cover her fees.

On June 24, 1996, Mr. Kim executed a settlement sheet that Ms. Edwards had prepared. The settlement sheet entitled Ms. Edwards to receive a fee of $1,833.33 plus $28.99 in costs, with Kim receiving the balance (after some additional payments to medical providers) of $3,439.18. On June 25 Edwards disbursed the sums from the escrow account in accordance with the settlement agreement, but in addition she paid $766.55 to Barbara Bailey (another attorney) for work done in the Kim case. On June 28 Edwards wrote an additional check for $650 against the escrow account, payable to "Cash," with a notation on the memo line that said "Attorney's fees." At the hearing Ms. Edwards could not recall why she withdrew the $650 or what client or case the fees were for.

On June 28 Reverend Ansah gave Edwards a check for $150.74 so that she would have sufficient funds to satisfy the Washington Gas judgment in full. Edwards deposited the check in her operating account on July 1. After that deposit, Edwards had $813.64 in the operating account and $517.95 in the escrow account. On July 16 the balance in the escrow account had risen to $1,244.45 when Edwards drew a check on it in the amount of $1,792.53 to pay the Washington Gas judgment. The next day, July 17, she transferred $560 from the operating account to the escrow account, bringing the escrow account balance to $1,804.45, enough to cover the check she had written to Washington Gas.

In July 1996 Edwards agreed to represent Rochelle Fashaw in a dispute with Nations Bank. Ms. Fashaw's son promised to send funds to cover Edwards' fees and to settle a $10,940.33 claim with Nations Bank. On or about July 20, 1996, Ms. Edwards received and deposited in her escrow account two checks, one for $375 and one for $500. The Board report states that the $500 check was for "Fashaw Fees" and the $375 check was for "Rochelle Fashaw/Fees."[5] Edwards later

---

4. Although the Board report states that the balance "had fallen to $103.60," Petitioner's Exhibit G–3, which the Board cites, and subsequent Board findings establish that the balance in the account on June 18, 1996, was *negative* $103.60.

5. The record is unclear as to the intended purpose of these checks. The Board report

withdrew $700 from her escrow account for an undetermined reason, leaving approximately $175 of the Fashaw monies in the escrow account.

In the summer of 1996, Edwards accepted Shellie Sharpe White as a *pro bono* client. Ms. White was having difficulty making her car payments to Ford Motor Credit Corporation ("FMC") and wanted Ms. Edwards to "help straighten out the number of payments" that she owed, so that she would not lose her car. Edwards negotiated a payment of $430.86, payable on August 1, 1996. On August 1 Ms. White brought $430.86 in cash to Ms. Edwards' office, gave it to an employee of Edwards, and was given a receipt indicating that the money was for payment to FMC. The money, however, was not deposited in either account, nor was any payment made to FMC at that time. According to the Board's report, Ms. Edwards "testified that she was unaware that Ms. White had brought the funds in to her office, was confident that Ms. White would try to bring the money in, and that [she] intended to make a 'temporary loan from trust funds' to cover the check to Ford Motor Credit." On August 1, 1996, the balance in the escrow account was $187.10 when Edwards drew a check on it, payable to FMC, for $430.86. On August 14 Edwards learned that this check had been returned by the bank for insufficient funds. She promptly purchased a Western Union Quick Collect Payment and sent it to FMC on White's behalf. On August 19 Edwards deposited $300 in cash in the escrow account, and on August 27 FMC redeposited the original check from Edwards. This time it was honored by the bank, effectively causing Edwards to pay the $430.86 twice.

Testifying before the hearing committee, Edwards essentially claimed that each instance of mishandling of client funds was the result of confusion and disorganization within her office. She acknowledged that she should not have placed client funds in her operating account and conceded that she had done so with respect to the Ansah and Kim monies. She denied, however, that any misappropriation occurred, and said that if it did, it was due to oversight and was not intentional. She offered several mitigating factors to the Board, including: (1) that she had no prior disciplinary record; (2) that she had an exemplary record of public service, as the hearing committee found; (3) that she did not profit from her misappropriations; (4) that she achieved her clients' desired results and did not owe them any money; (5) that the violations occurred during a brief period from approximately mid-June 1996 to mid-August 1996; and (6) that she was ill during that period and at the same time was relocating her office, and that the move resulted in disorganization and lost or misplaced files.[6]

states that the $500 check was for "Fashaw Fees," but that check, which is reproduced in the record, bears no such indication on the memo line. When depositing these checks, Edwards wrote on the deposit slip that the $500 was for "fees" and the $375 was for "settlement." In a letter to Bar Counsel, Ms. Edwards indicated the opposite: that the $375 check was for "legal fees" and the $500 was for "settlement." Before the hearing committee, Ms. Edwards testified that she was unsure whether the checks were for fees or for settlement of the claim, and for that reason she deposited them in her escrow account.

6. In her brief to this court Ms. Edwards has said, in addition, that: (1) she was carrying a large case load during this period; (2) her husband was recovering from open-heart surgery; (3) no aggravating factors were present; (4) no clients complained about her conduct; (5) she suffered computer failures and damage to her records due to flood damage, and (6) she promptly corrected her inadvertent errors. Bar Counsel contends that we should

The Board adopted the hearing committee's conclusion that Ms. Edwards had committed "multiple acts of misappropriation," including:

1. Putting Rev. Ansah's check ... into her Operating Account rather than her Escrow Account and then permitting the funds in the Operating Account to fall below the amount he gave her for payment to Washington Gas.

2. Permitting the balance in the Operating Account again to fall below the amount necessary to settle Rev. Ansah's debt to Washington Gas.

3. Depositing Rev. Ansah's additional check to pay off the gas company into her Operating Account ... and then permitting the [combined] balance in the Operating Account and the ... Escrow Account to fall below the [settlement] amount. . . .

4. Drawing a check to another lawyer from the Kim settlement funds in the Escrow Account ... resulting in the other lawyer receiving more than the maximum unpaid attorney's fees authorized in the Kim settlement.

5. Drawing a check on the Escrow Account for an attorney's fee beyond the amount she was entitled to [receive] from the Kim settlement.

6. Permitting the balance in the Escrow Account to fall below the amount given her for payment of the Fashaw settlement. . . .

7. Failing to deposit in her Escrow Account the money given to her by Ms. White for payment to Ford Motor Credit Corporation and permitting the balance in the Escrow Account to fall below the amount owed by Ms. White to Ford Motor Credit.

The Board found that these acts of misappropriation "were, at a minimum, reckless," and that this recklessness was evidenced by:

1. The extensive pattern of misappropriation. . . .

2. The failure of Respondent to offer any explanation for the misappropriations other than "confusion", "mistakes" and "carelessness". . . .

3. Commingling of client funds with Respondent's own funds. . . .

4. Failure to keep complete records of client funds. . . .

5. Failure to deposit client funds in her Escrow account. . . .

■ Respondent's writing of two checks when funds were insufficient to honor them.

The Board acknowledged that it, and the hearing committee, found this to be "an extremely difficult case" and took note of the hearing committee's statement that "had [the misappropriation] occurred only once or twice, and had Respondent had any records or even explanations for the checks she drew from her bank accounts, we might be able to shoehorn these facts into the mere negligence exception." However, because the misappropriation was reckless, and because the Board found that the mitigating factors presented by Edwards "singly and collectively [did] not satisfy her burden under the authorities to overcome the presumption of disbarment," the Board recommended that Edwards be disbarred.

not consider any mitigating factors not presented to the Board. Since we decide this case on other grounds, we do not consider the sufficiency of any of these mitigating factors, whether raised before the Board or for the first time before this court. On remand, however, the Board may take any or all of them into account, if it chooses to do so, when recommending a sanction.

## II. Misappropriation

■ Under our Rules Governing the Bar, this court "shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar Rule XI, § 9(g); *see, e.g., In re Berryman*, 764 A.2d 760, 766 (D.C.2000). The actual imposition of discipline, however, is the task of this court alone. "In the final analysis, the responsibility to discipline lawyers is the court's. The buck stops here." *In re Shillaire*, 549 A.2d 336, 342 (D.C.1988). With these principles in mind, we consider the Board's recommendation that Ms. Edwards be disbarred and conclude that it is not fully supported by the evidence.

The issue before us is whether Edwards engaged in misappropriation of client funds and, if so, whether her conduct was "blameworthy enough" to require disbarment. *In re Pels*, 653 A.2d 388, 393 (D.C. 1995); *accord, e.g., In re Pierson*, 690 A.2d 941, 946 (D.C.1997). We agree with the Board that Edwards' actions with regard to the Ansah funds did amount to misappropriation. However, although her handling of the Fashaw, Kim, and White funds did involve some serious and potentially sanctionable conduct, the Board's conclusion that Edwards engaged in misappropriation in her handling of these funds was not supported by substantial evidence.

We have defined misappropriation as "any unauthorized use of client's funds entrusted to [a lawyer], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not [she] derives any personal gain or benefit therefrom." *In re Harrison*, 461 A.2d 1034, 1036 (D.C.1983) (citation omit-

ted); *see In re Pierson*, 690 A.2d at 947 (citing cases). We have also warned that when client funds are "deposit[ed] ... into an attorney's operating account ... misappropriation occurs when the balance in that account falls below the amount due to the client." *In re Micheel*, 610 A.2d, 231, 233 (D.C.1992); *accord, e.g., In re Pels*, 653 A.2d at 393. We said in *Micheel* that misappropriation "is essentially a *per se* offense; proof of improper intent is not required." *In re Micheel*, 610 A.2d at 233 (citing *In re Harrison*, 461 A.2d at 1036).

■ We accept the Board's finding that Ms. Edwards engaged in some form of misappropriation with regard to the Ansah funds. First, Edwards wrongly deposited in her operating account the check that Ansah gave her for settlement of the Washington Gas judgment, a clear violation of the prohibition against the commingling of client funds with her own. *See In re Hessler*, 549 A.2d 700, 701 (D.C. 1988). While the commingling in itself did not amount to misappropriation, Edwards engaged in misappropriation the instant she allowed the balance in her operating account to fall below the amount given to her by Reverend Ansah to satisfy his debt. *See In re Micheel*, 610 A.2d at 233; *In re Ingram*, 584 A.2d 602, 603 n. 1 (D.C.1991); *In re Thompson*, 579 A.2d 218, 220 n. 5 (D.C.1990).

With regard to the Fashaw, Kim, and White funds, however, we conclude that the Office of Bar Counsel did not meet its burden of proving by clear and convincing evidence, as it must do, that Edwards engaged in the unauthorized use of client funds. *See, e.g., In re Anderson*, 778 A.2d 330, 335 (D.C.2001).

### A. *The Fashaw Funds*

■ The evidence of record does not establish that Edwards' actions in dealing with Ms. Fashaw's funds constituted mis-

appropriation of any sort. On July 20, 1996, Ms. Edwards received two checks in the amount of $375 and $500. The Board found that these checks indicated that they were for "Fashaw Fees" and "Rochelle Fashaw/Fees," although the record is not clear about that (see note 5, *supra*). Edwards deposited both checks in her escrow account, bring the balance up to $887.10. On July 26 Ms. Edwards withdrew $700 from the escrow account, but at the hearing she could not recall her reason for doing so. She now contends that it was never established by clear and convincing evidence that she was not entitled to this money, and we agree. It is impossible to discern from the Board's findings or from the record what portion of the two checks, if any, was for settlement of Nations Bank's claim against Fashaw and what portion was for Edwards' fees. Since it is at least possible, and perhaps more likely than not, that Edwards was entitled to the money she withdrew, we hold that the Board could not find by clear and convincing evidence that Edwards engaged in misappropriation of the Fashaw funds.

## B. *The Kim Funds*

■ Neither can we accept the Board's finding that Edwards misappropriated any of the Kim funds. After receiving the $5,500 settlement check from State Farm and depositing it in her operating account, Ms. Edwards transferred $4,000 of that money to her escrow account. According to the settlement sheet executed by Mr. Kim, Edwards was entitled to $1,833 in attorney's fees from the settlement check.

After all disbursements had been made to Kim and others named in the distribution agreement, only $333 of the Kim funds remained in the escrow account. Ms. Edwards then made a payment of $766.55, apparently unauthorized by Kim, to Barbara Bailey, another attorney, for work performed in the Kim case. The only certain conclusion from these facts is that the payment to Ms. Bailey exhausted the remaining $333 of the Kim settlement proceeds, an amount to which Edwards was already entitled. Nothing in the record indicates that the payment to Bailey was made with money that Edwards was obliged to pay to Kim or to anyone else involved in the Kim case. It follows that any additional money disbursed to Bailey came from funds other than those belonging to Kim. Although such conduct could perhaps form the basis for a claim of misappropriation, *i.e.*, if Bar Counsel could establish that Edwards used other client funds to make the payment to Bailey, on the present record there is no evidence that Kim or any other client had any interest in the money remaining in the escrow account at the time that Edwards drew the check to Bailey. Since no evidence in the record supports a finding that Edwards used *any* client money to pay Ms. Bailey, a finding of misappropriation cannot be based on that transaction. *See In re Micheel,* 610 A.2d at 233.

■ The only other possible instance of misappropriation with regard to the Kim funds [7] was Edwards' deposit of the

---

7. The Board apparently inferred that the June 28 check for $650, payable to "Cash" and bearing the notation "Attorney's fees," was intended as a payment of fees in the Kim case greater than the amount Ms. Edwards was entitled to receive. See the Board's Conclusion No. 5, quoted at page 10, *supra.* But that is not at all clear from the record. At the hearing Ms. Edwards could not recall what

the $650 was for; indeed, it may well have been a fee related to an entirely different case or client. There was no other evidence connecting it with the Kim case, aside from the happenstance that the check was written just a few days after the execution of the Kim settlement sheet. At best, the significance of that temporal coincidence is ambiguous; it

$5,500 settlement check on June 19 in her operating account when the account carried a negative balance of $103.60, which effectively reduced the amount of the deposit to $5,396.40. As we have held, "misappropriation occurs when the balance in that account falls below the amount due to the client." *In re Micheel,* 610 A.2d at 233. However, there was no dispute that Edwards was entitled to approximately $1,870 of the settlement proceeds in fees and costs, according to the settlement sheet executed on June 24. Therefore, despite the negative balance in her operating account at the time of the deposit, the balance in that account after the deposit was sufficient to cover the amount still due to Kim.

## C. *The White Funds*

■ A finding that Edwards misappropriated the White funds is also unsupported by the record. On August 1, 1996, Ms. White brought $430.86 in cash to Ms. Edwards' office, gave that money to an employee of Edwards, and received a receipt indicating that it was for "Ford Motor Credit—payment." There was evidence that Edwards was unaware that White had paid the money, and it was never deposited in either the escrow account or the operating account. The Board found, nevertheless, that when Edwards allowed the balance in her escrow account to drop below $430.86, she committed reckless misappropriation. We cannot agree. Although Edwards' failure to deposit White's payment may have violated her obligation to safeguard client property (Rule 1.15(a)) and to deposit funds in a specially designated bank account (Rule 1.17(a)), the evidence does not establish that she misappropriated White's money. The fact that the balance in the escrow account fell below $430.86, the amount of Ms. White's pay-

surely does not suffice to prove misappropria-

ment, is without significance because the White money was not deposited in that account.

## III. RECKLESSNESS

■ This court has consistently held that "misappropriation revealing an unacceptable disregard for the safety and welfare of entrusted funds—in short, that is reckless—will warrant disbarment under *Addams.*" *In re Anderson,* 778 A.2d at 338 (citing *In re Addams, supra* note 2). The hearing committee and the Board both found that Edwards' handling of her clients' funds amounted to reckless misappropriation. Because we conclude that there was no misappropriation at all with respect to three of the four clients involved in this case, we must remand the case to the Board for further proceedings on the issue of recklessness and a new recommendation as to the appropriate sanction.

We reach the decision to remand for two reasons. First, we hold that, on the record before us, the Office of Bar Counsel failed to establish by "clear and convincing evidence" that Edwards engaged in reckless misappropriation of funds, as it is required to do. *See, e.g., In re Anderson,* 778 A.2d at 335; *In re Mitchell,* 727 A.2d 308, 313 (D.C.1999). Second, the Board specifically noted that this was "an extremely difficult case" and said that, had Edwards' violations not been so extensive, it might well have concluded that disbarment was not an appropriate sanction.

■ To establish reckless misappropriation in this case, Bar Counsel had to prove by clear and convincing evidence that Edwards "engaged in a pattern or course of conduct demonstrating an unacceptable disregard for the welfare of entrusted funds ...." *In re Anderson,* 778 A.2d at

tion by clear and convincing evidence.

339. The Board's finding of recklessness was based, in large part, on what the Board deemed "an extensive pattern of misappropriation." Because we conclude that no such pattern of misappropriation existed, or at least that no such pattern was shown by the evidence, it follows that the Office of Bar Counsel failed to meet its burden of proof. Although Edwards did engage in some instances of commingling, and although her record-keeping was slipshod, to say the least, we do not have before us sufficient proof of a *pattern* of misconduct that rises to a level requiring the sanction of disbarment. "[O]ur decisions, by clear implication, have rejected the proposition that recklessness can be shown by inadequate record-keeping alone combined with commingling and misappropriation." *In re Anderson,* 778 A.2d at 340 (citing *In re Reed,* 679 A.2d 506, 509 (D.C. 1996), and *In re Choroszej,* 624 A.2d 434, 436 (D.C.1992)).

We do not mean to minimize the seriousness of Edwards' conduct, or to imply that reckless misappropriation and the resultant sanction of disbarment is not possible as an ultimate result in this case. We hold only that such a conclusion is simply not supported by substantial evidence in the record before us. *See In re Evans,* 578 A.2d 1141, 1142 (D.C.1990). We therefore remand this matter to the Board with instructions to reconsider whether, given our ruling that Edwards did not misappropriate any of the Fashaw, Kim, or White funds, Bar Counsel has established that the manner in which Edwards handled her clients' funds displayed a reckless "disregard for [the funds'] safety and welfare." *See In re Anderson,* 778 A.2d at 338. The Board, in its discretion, may also reassess any mitigating circumstances proffered by Ms. Edwards and determine whether a sanction of disbarment is still appropriate.

The case is remanded to the Board for further proceedings consistent with this opinion.

*Remanded.*